UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS ANDERSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED AIRLINES, INC., et al., <br><br> Defendants | Case No. 1:23-CV-00989 <br><br> Honorable Matthew F. Kennelly |

**PLAINTIFFS' REPLY TO**
**DEFENDANTS' RESPONSE FOR PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**FIRST AMENDED COMPLAINT**

1

**INTRODUCTION**

Plaintiffs respectfully request the Court grant leave to file their First Amended Complaint. The Defendants' arguments are unsupported by legal reasoning and are simply conclusory.

Defendants' argument that Plaintiffs' First Amended Complaint ("FAC") simply rehashes prior allegations without making any meaningful changes and should result in a dismissal over futility is completely without merit. (Defendants' Response to Motion for Leave to Amend, Doc. No. 28, at 6). In fact, it is the Defendants who constantly refer back to their prior motion to dismiss, instead of evaluating the actual allegations made in the FAC, which are significantly more robust than those made in the original complaint. *S*ee Defendants' Motion to Dismiss and Memorandum, Doc. Nos. 16 and 17 respectively; *see also* Court's Minute Entry and Order of June 30, 2023, Doc. No. 27.

Then, for their second argument the Defendants' offer yet another red herring claim that argues that, since United has been sued before, that this FAC should be dismissed. However, if this were truly the case and any prior identical or similar action culminated in Defendants' favor, then we would likely see Defendants' instant motion being based upon *res judicata* or collateral estoppel at the very least. What Defendants fail to realize or are deliberately ignoring is that the prior cases mentioned were filed but never adjudicated, much less dismissed with prejudice.

Plaintiffs' lawsuit is a nuts-and-bolts civil action to recover concrete damages that resulted from the Defendants' actions against the Plaintiffs. The FAC identifies specific harms caused by Defendants' violation of Emergency Use Authorization (EUA) drug inoculation requirements, invasions of privacy, negligence, breach of contract, retaliation, failure to accommodate, disparate treatment, creation of a hostile work environment, violations of the

Genetic Information Non- Disclosure Act ("GINA"), and intentional and negligent infliction of emotional distress. All the wrongful acts committed by the Defendants as an employer were predicated on their unlawful discrimination, harassment, and retaliation against Plaintiffs based on Plaintiffs' lawful exercise of their sincerely held protected religious beliefs as employees.

## LEGAL STANDARD

According to the Federal Rule of Civil Procedure Rule 15, a party is allowed an amendment as of right once within twenty-one days after the other party's filing. However, a party is still able to amend a complaint after that, "with the opposing party's written consent or the court's leave,' which 'should [be] freely give[n]' when 'justice so requires." *See Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606, 610 (N.D. Ill. 2015); *see also Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir.2008). Additionally, undue delay alone is rarely enough for a judge to deny a motion to amend. *See Costello* 520 F.3d at 743 (where the district court based its denial of the leave to amend on the delay of 14 months and because it was filed after discovery closed); *see also Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792-93 (7th Cir.2004); *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992).

Moreover, "when the basis for denial is futility, the Court applies Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim for relief." *See Naperville Smart Meter Awareness* 114 F.Supp.3d at 611; *See also Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir.1997). To prevail on a 12(b)(6) motion for failure to state a claim, a complaint only needs to "plausibly" allege sufficient facts, "accepted as true, to state a claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

I. **Plaintiffs' Proposed Amendments are Not Futile**

3

The Defendants are improperly asserting that the Plaintiffs FAC is futile, because there was no new material included in the amendment or new allegations. However, the first 100 paragraphs of the FAC are contain materially significant upgrades from the paragraphs contained in the original complaint. Specifically, the FAC details various burdens which were only applied on unvaccinated United employees that had religious exemptions.

Conversely, Defendants' motion simply states that Plaintiffs' FAC is futile for the same "reasons discussed in United's April 21 Motion to Dismiss." Defendants make no attempt to specifically address the upgraded allegations contained in the FAC. Accordingly, Defendants cannot prevail on their motion because the "reasons discussed in United's April 21 Motion to Dismiss" simply are not applicable to the upgraded allegations contained in the FAC.

II. **Plaintiffs' Complaint is Not a Shotgun Pleading Since They Have Provided Sufficient Facts and Details for Defendants to Understand the Allegations Made Against Them.**

Defendants' claim that this is a shotgun pleading falls short. While it is true that the Complaint contains multiple counts and allegations, this is not necessarily indicative of a shotgun pleading. "A shotgun pleading is one where it is virtually impossible for the court and opposing parties to identify what facts support each legal theory because of the way the complaint was written." *Jones v. United States* VA, 2022 U.S. App. LEXIS 30699, at *1.

Indeed, Defendants' arguments that the FAC is a shotgun pleading contradicts its own motion paper. On the one hand, Defendants claim that the FAC lacks specifics allowing them to determine on what grounds they are being sued. On the other hand, the Defendants are able to sequentially lay out all of Plaintiffs' claims and respond to each one individually.

Furthermore, Courts have ruled that matters that allege multiple defendants should not be immediately dismissed as shotgun pleadings. "'Shotgun' pleadings are cumbersome, confusing

4

complaints..." *See Griffin v. Benefytt Techs., Inc.*, No. 20-62371-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 33461, at *4 (S.D. Fla. Feb. 24, 2022). There is nothing confusing regarding the allegations alleged in Plaintiffs' Complaint, because each allegation is detailed and describes applicable laws as well as the Defendants' involvement in their violations. Neither is it fatal that the Complaint alleges that multiple defendants are liable for the conduct alleged in each count. *See State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs.*, 389 F. Supp. 3d 1137, 1147 (S.D. Fla. 2019); *see also K Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").

Here, the allegations in the Complaint are presented in as clear and straightforward manner as is possible given the number of Plaintiffs and Defendants and the numerous illegal actions of Defendants. Defendants may wish that they were being sued by fewer plaintiffs under fewer legal theories, but that desire is not enough for the FAC to be ruled an improper shotgun pleading.

Lastly, dismissing this action as a shotgun pleading without giving Plaintiffs an express directive to correct any issues the Court may have with the form of the FAC would be improper. "[D]istrict courts have an inherent authority to strike so-called 'shotgun' pleadings and order a plaintiff to provide a more definite statement." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 n.10 (11th Cir. 2015). Thus, if this Court finds that the FAC, even after its initial amendments, still follows the format of a shotgun pleading, Plaintiffs should be ordered to provide a more definite statement before this action is dismissed with prejudice.

### III.   Plaintiffs' FAC Invasion Of Privacy Claim Is A Major Substantive Upgrade From The Original Complaint.

To plausibly state a claim for invasion of privacy for public disclosure of private facts Plaintiffs need to establish "the dissemination of truthful private information which a reasonable

5

person would find objectionable." *See Guarino v. Mandel*, 327 So.3d 853, 863 (Fla. Ct. App. 2021). "Claims based on this tort generally must be made to the public at large or to so many persons that the matter is substantially certain to become public knowledge." *Id.* They must prove that there was publicity of private information by the Defendants to the public which would be highly offensive to a reasonable person." *See Cordts v. Chi. Tribune Co.,* 369 Ill. App. 3d 601, 607 (Ill. App. Ct. 2006).

      A.     **Plaintiffs' Satisfied the Publication Element**

According to Defendants, Illinois law has an exception to disclosing to the "public at large" where disclosure is made to a small number of people who have a "special relationship" with the plaintiff. Defendants' Memorandum for Motion to Dismiss, Doc. No. 17, at 12. However, an argument can be made that even a relatively small group of people can constitute a "public" for the purposes of this claim, particularly when the disclosure is widespread or reaches an audience beyond the intended recipient. Here, where private health information including an employee's vaccination status is broadcasted to consumers and other employees within the company, such dissemination of this information to multiple individuals, including those outside the intended recipient group, constitutes a public disclosure of private facts. While a special relationship can be established between co-workers who spend significant amounts of time together, if an employer did not obtain the employee's consent to share their health information and allowed other employees (with whom plaintiffs may not interact with) access to that private information that would satisfy the elements required for this cause of action, especially when that disclosure causes the employee harm, harassment, discrimination or embarrassment from other employees within the company. *See* Defendants' Memorandum for Motion to Dismiss, Doc. No. 17, at ¶¶ 206.

Finally, it can be argued that passengers on a flight can be considered part of the public for the purposes of a public disclosure of private facts claim. Therefore, broadcasting an employee's health information within a workplace to consumers and other employees satisfies the publication element of a public disclosure of private facts claim, as it involves a dissemination of the information beyond the intended recipient or recipients with a special relationship and can cause harm or embarrassment to the employee.

    **B.**  **Plaintiffs' Have Proven That the Disclosure was Highly Offensive to a Reasonable Person**

Disclosing an individual's health information to consumers and employees within a company without their consent is highly offensive to a reasonable person for several reasons. An individual's health information is highly sensitive and personal in nature, because it is information that one would ordinarily not share with strangers. Such information is deserving of a high degree of privacy protection. When this information is disclosed without an individual's consent, it can be deeply embarrassing and intrusive, as it contains personal and private details about the individual that they may not want known. Additionally, disclosure of an individual's health information without their consent can have negative consequences for their employment and personal life. Here, as a result of disclosure regarding vaccination status and religious accommodations, Plaintiffs faced unfavorable treatment, harassment, threats, abuse, and mental anguish from their colleagues and customers because their private health information was made public.

In light of the foregoing reasons, it is clear that disclosing an individual's health information to consumers and employees without their consent is highly offensive to a reasonable person. The disclosure violates the individual's right to privacy, can have negative consequences for their employment, safety, and personal life. Thus, the conduct the Complaint

alleges against the Defendants' is both highly offensive and deserving of legal action to protect the Plaintiffs' individual rights to privacy.

### C. Plaintiffs' Established the Element of Public Concern.

An employee's vaccination status is a private and personal matter that is of no legitimate public concern and has no bearing on Plaintiffs' abilities to perform their job duties. An employee's vaccination status does not affect their work performance, nor does it pose a direct threat to the health and safety of their customers or colleagues, particularly colleagues they do not work alongside. Therefore, it is not a legitimate concern of the public or their employer to know whether or not someone is vaccinated, and whether they received a religious accommodation. Furthermore, it is important to note that the disclosure of an employee's vaccination status without their consent could lead to discrimination, harassment, or stigmatization. For example, if an employee chooses not to get vaccinated due to religious or personal beliefs, disclosing their vaccination status could lead to discrimination based on those beliefs.

Thus, an employee's vaccination status is a private matter that should be protected under an individual's right to privacy. It has no legitimate public concern, does not affect an employee's ability to perform their job duties, and is a personal choice that should be respected. Therefore, Plaintiffs have plead with sufficiency their invasion of privacy claim.

### IV. Plaintiffs' Satisfy the Negligence Claim Requirements with a Plausible and Actionable Claim

Plaintiffs' claim for negligence should not be dismissed. First, Plaintiffs' negligence claim is not a mere repackaging of their intentional invasion of privacy claim. The negligence claim alleges a distinct cause of action, based on the duty of care that Defendants owed Plaintiffs to protect their personal health information (PHI). Here, the negligence claim alleges that the

Defendants had a duty of reasonable care, which includes protecting Plaintiffs PHI by appropriate means and procedures. Moreover, unlike the intentional invasion of privacy claim, the negligence claim does not require a showing of intentional conduct by Defendants. Rather, it alleges that Defendants breached their duty of care to Plaintiffs by failing to take reasonable steps to protect their PHI.

Furthermore, the present case involves the alleged disclosure of PHI, which is distinct from the disclosure of private information in those cases. The elements for the tort of invasion of privacy by the disclosure of private facts are the following: "1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern." *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. Dist. Ct. App. 1993). Which are distinct from the elements of negligence: "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Bartsch v. Costello*, 170 So. 3d 83, 84 (Fla. Dist. Ct. App. 2015). Thus, these are two distinct claims.

Finally, at this stage, Plaintiffs are only required to plead a plausible claim, not to prove it. "Allegations must nudge claims across the line from conceivable to plausible in order to survive motion to dismiss." *See Bejjani v. Manhattan Sheraton Corp.*, 567 F. App'x 60, 62 (2d Cir. 2014). Plaintiffs have alleged that Defendants breached their duty of care by publishing their PHI throughout the company and broadcasting it to other employees and consumers. These allegations are sufficient to state a valid claim. Therefore, the claim for negligence should not be dismissed.

    **V.**    **Pilot Plaintiffs Have Made a Valid Illinois Whistleblower Act Claim**

In the Illinois Whistleblower's Act Count IV, Plaintiffs squarely make plausible allegations that each Plaintiff was punished for refusing to participate in an activity that would result in a violation of a state or federal law, rule, or regulation. *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 135 N.E. 3d 891, 900– 01 (Ill. 2019). The specific regulation cited is 14 C.F.R. § 61.53, which requires a medical certificate for anyone who operates an aircraft. *See* FAC, Doc. No. 23, at ¶ 218. Plaintiffs have alleged that Defendants punished them for refusing to participate in an activity that was done in violation of this regulation, which meets their minimal burden at this stage of pleading.

## VI. Plaintiffs' Have Proven Sufficient Facts and Details to Adequately Allege Exhaustion of Administrative Remedies for Their Title VII (Counts V–VI) and GINA (Count VIII) Claims.

As the FAC details in paragraph 200, the EEOC abrogated any responsibility regarding the legal implications of the EUA. When the EEOC did so, it telegraphed that it would not be getting involved with any employee actions related to vaccine mandates that relied on the EUA for legal support. Specifically, the EEOC published a notice stating that:

> The EEOC has received many inquiries from employers and employees about the type of authorization granted by the U.S. Department of Health and Human Services ("HHS") [FDA] for the administration of three COVID-19 vaccines. These three vaccines were granted [EUA] by the FDA. It is beyond the EEOC's jurisdiction to discuss the legal implications of EUA or the FDA approach. Individuals seeking more information about the legal implications of EUA or the FDA approach can visit the FDA's EUA page.

Such a communication can only be interpreted to be an announcement by the EEOC that the normal administrative remedies were preemptively exhausted insofar as the EUA was involved.

10

This communication is also consistent with Plaintiffs' claim that the EEOC—by its own admission—lacks the jurisdiction and institutional capacity to resolve issues involving the use of EUA approved vaccines. *See* FAC, Doc. No. 23, at ¶¶ 199-203. If a declaration by the EEOC that they do not have the ability to address employee concerns regarding vaccines approved under an EUA is not an admission that filing a charge with the EEOC would have been futile, then nothing is.

Regardless, the FAC alleges in paragraph 287 that all Plaintiffs have filed or are in the process of filing complaints with the EEOC, despite the EEOC's preemptive determination that this issue was beyond its jurisdiction. Accordingly, at the very most, the Court should not dismiss the FAC, but could instead order the FAC be amended to detail each Plaintiff's filling of charges with the EEOC.

**VII. Count I, Concerning the EUA Statute, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III), presents factual violations of law causing damages, and therefore should not be dismissed.**

The FAC presents in paragraph 3, the Defendants' willful, wanton, and blatant disregard for this core law requirement—*i.e.* that every individual must be informed of the "option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." Paragraph 129 of the FAC alleges that, almost 2 weeks ahead of any FDA actions announcing COMIRNATY was the only FDA approved vaccine and that Pfizer, Moderna and J&J were re-authorized under the EUA (which occurred on August 23, 2021; see FAC, Doc. No. 23, at ¶¶ 87-88), on August 6, 2021, United Airlines CEO Scott Kirby announced all US-based employees would be required to receive a COVID-19 "vaccine" within five weeks of the FDA granting EUA of a "vaccine" or five weeks after September 20, 2021, whichever came first.

11

The FAC goes on in detail to describe the negative employment actions that Plaintiffs faced for failing to receive a vaccine authorized pursuant to an EUA.

In the Defendants' Opposition to Plaintiffs' Motion for Leave to Amend Complaint, on page 12, the Defendants falsely claim they did not require Plaintiffs to receive a vaccination pursuant to an EUA-authorization, but that Plaintiff could have chosen to receive a fully FDA approved vaccine. This statement is inaccurate. The COMIRNATY vaccine was the only vaccine fully approved by the FDA, but it was never distributed in the United States. *See* FAC, Doc. No. 23, at ¶ 87. The vaccines that Defendants mandated their employees receive were not approved by the FDA but merely authorized under the EUA (*see* FAC, Doc. No. 23, at ¶¶ 88-91), necessitating that Defendants comply with the provisions of 21 U.S.C. 360bbb-3(e)(1)(A)(ii)(III), which they are alleged to have failed to do.

### VIII. Plaintiffs Satisfied the Requirements of Valid Title VII Claims Against the Defendants.

The FAC clearly alleges Defendants' failure to accommodate their religious exemptions (Count V; *see* FAC, Doc. No. 23, at ¶¶ 222-239), disparate treatment of Plaintiffs because of their religion (Count VI; *see id*. at ¶¶ 240-261), and creation of a hostile workplace because of Plaintiffs' religion (Count VII; *see id*. at ¶¶ 262-287). Additionally, the FAC alleges that employees seeking religious exemptions were blocked from seeking medical exemptions. *See id*. at ¶ 136. These religious exemptions were only granted if Plaintiffs answered probing questions and filed paperwork with United pursuant to unreasonable, arbitrary deadlines. *See id*. at ¶¶ 139-141.

Defendants only arguments against Counts V-VII is that (1) they fail to individualize each Plaintiff's lack of accommodation; and (2) that any lack of accommodation/disparate

treatment/hostile work environment resulted because of Plaintiffs' vaccination status and not because of Plaintiffs' religion. Both of these arguments must fail.

First, the FAC details company policy of United that was applicable to all of its employee's, including the Plaintiffs. Other than the terminations of certain Plaintiffs, which is specifically described in the FAC were applicable, all Plaintiffs experienced the exact same failures to accommodate, disparate treatment, and creation of a hostile work environment in the manner described in the FAC. In other words, this is not a complaint in which each plaintiff was discriminated against because of their religious beliefs in a unique way. Instead, the FAC concerns a situation in which every Plaintiff was discriminated against because of their religious beliefs in the exact same manner, pursuant to company policy that was applicable to all employees. Thus, the FAC does achieve the end of individualizing the Plaintiffs claims because each of the company policies was effective against each Plaintiff individually.

Second, the argument that the lack of accommodation was because of vaccination status and not religion ignores that, in Plaintiffs' case, vaccination status was dependent upon their religious beliefs. This presents a scenario similar to the scenario that occurred *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731 (2020). In that case, the Supreme Court found that it would be actionable under Title VII prohibition of sex discrimination if a male employee was treated in a discriminatory manner because he was attracted to men. *Id*. at 1741. Specifically, the Supreme Court found that an employer could not escape liability for discriminating against this male employee by saying it was due to his attraction to men when the same employer would not fire a female employee for being attracted to men. *Id*. In other words, an employer cannot escape liability under Title VII by simply pointing to another basis for discriminating against an employee if the discrimination on this other basis itself relates to the employee's sex. *See id.*

13

Similarly, here, while the discrimination Plaintiffs complain about relates to their opposition to being vaccinated, that opposition in turn relates to their religious beliefs. Accordingly, Defendants should not be allowed to escape liability under Title VII simply by claiming they discriminated against Plaintiffs on another ground (*i.e.* vaccination status) when this other ground was wholly dependent upon Plaintiffs religious beliefs.

The problem with Defendants' argument can be further highlighted by way of an analogy. Defendants are claiming something akin to arguing that they only discriminated against their employees because they did not eat bacon the company wanted them to eat, ignoring the fact that certain employees could not eat bacon without violating their religious beliefs against the consumption of pork.

Accordingly, both lines of argument made by Defendants against Counts V-VII must fail. The FAC contains sufficient allegations to pass legal muster under a Rule 12(b)(6) analysis.

**IX.     In Counts VIII & IX, Plaintiffs Plead Valid GINA Claims.**

As clearly explained in the FAC paragraph 83, the mRNA inserted into the cell nucleus, serve as instructions or a recipe for the creation of the spike protein that triggers an immune response. Such mRNA is a synthetic surrogate of the body's genetic information. Thus, the FAC adequately alleges a cause of action under GINA because disparate treatment on the basis of vaccination status with any of the three vaccines that were distributed in the United States is indistinguishable from disparate treatment on the basis of genetic information because these vaccines operate by means of altering a vaccinated individual's genetic information. *See* 42 U.S.C. §2000ff-1(a)(1),(2).

**X.      Count X. Plaintiffs' Adequately Alleged Constitutional Violations against United with Sufficient Facts**

14

Plaintiffs have plead valid cognizable Constitutional claims. Plaintiffs' have satisfied the requirements for a valid *Bivens* case claim and/or Section 1983 Cause of Action against United. Plaintiffs have alleged and can prove that United's management has been so enmeshed with the federal government that they are undoubtedly either a federal and/or State Actor.

Here, the Defendants incorrectly argue against United being a state actor by failing to disclose the standard used for a private actor to act under color of law. This standard simply required that United and the Biden Administration have a "meeting of the minds' and reach an understanding to deny plaintiffs a constitutional right. *See Wilson v. Warren Cnty.*, 830 F.3d 464 (7th Cir. 2016); *see also Adickes v. S.H. Kress & Co.* , 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hanania v. Loren – Maltese* , 212 F.3d 353, 356 (7th Cir. 2000) (requiring a showing of "a concerted effort between" a private actor and state actor and that a state actor and private actor "reached an understanding to deprive the plaintiff of her constitutional rights"); *Cunningham v. Southlake Ctr. for Mental Health, Inc.* , 924 F.2d 106, 107 (7th Cir. 1991) ("A requirement of the joint action charge ... is that both public and private actors share a common, unconstitutional goal."). Thus, as long as the private actor shares the state actor's unconstitutional goal and cooperates with the state actor in pursuit of this goal, the private actor can be found to be acting under color of state law under § 1983. *See Wilson* 830 F.3d at 464. Here, when high level employees of United to sent emails to employees notifying them of the consequences for not taking the vaccine (among other allegations), Defendants telegraphed that they shared in the federal government's unconstitutional goal of forcing vaccinations on their employees, qualifying as acting under color of law.

Against this, Defendants incorrectly cite case law. For example, they use the case *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023) which they describe as a similar case, in

order to falsely argue that section § 1983 has no applicability to the case. *See* Defendants' Response to Motion for Leave to Amend, Doc. No. 28, at 16. In reality, the court in *Ciraci* never said that section § 1983 cannot be utilized in covid cases or against private actors; instead, the Court described the situations in which a state actor can be acting under color of law in Covid cases. *See Ciraci* 62 F.4th at 287. Those circumstances include: "(1) when the private entity performs a traditional, exclusive public function; (2) when the government compels the private entity to take a particular action; (3) when the government acts jointly with the private entity." *Id; See Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928 (2019). These sorts of circumstances are exactly what the FAC alleges.

## CONCLUSION

Plaintiffs' First Amended Complaint passes legal muster under a Rule 12(b)(6) analysis and therefore should not be dismissed with prejudice.

Dated: August 7, 2023

                        Respectfully submitted,

                        By: */s/ John M. Pierce*
                             John M. Pierce
                             **John Pierce Law P.C.**
                             jpierce@johnpiercelaw.com
                             21550 Oxnard St., 3rd Fl PMB 172
                             Woodland Hills, CA 91367
                             Telephone: (213) 349-0054

                             Kevin F. O'Connor, Local Counsel
                             O'Connor | O'Connor, P.C.
                             kevin@oconnor-oconnor.com 110 E.
                             Schiller Street, Suite 212
                             Elmhurst, IL 60126
                             630-903-6397