IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS ANDERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 23 C 989 |
| ) | |
| UNITED AIRLINES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Thomas Anderson and twenty-nine other plaintiffs[1] (collectively, Anderson) are unvaccinated pilots, flight attendants, and ground staff who work at United Airlines, Inc. Anderson filed suit against United Airlines, Inc., United's CEO Scott Kirby, and various other United executives and board members (collectively, United), asserting twelve claims arising out of United's COVID-19 vaccine mandate. The defendants moved to dismiss Anderson's original complaint. The Court set a schedule for briefing that motion and extended the deadline for Anderson's response at his request. On the due date for his response, Anderson instead filed an amended complaint. Because that filing was outside the time for amendment as of course under Federal Rule of Civil Procedure 15(a)(1), the Court determined to treat Anderson's filing as a motion for leave to file an amended complaint. The defendants filed a response opposing the motion, and

---

[1] Anderson's proposed amended complaint only asserts claims on behalf of twenty-eight plaintiffs.

Anderson replied to the defendants' response. For the reasons stated below, the Court denies the motion for leave to file an amended complaint.

## Background

United is a major American airline that operates both domestically and internationally and employs approximately 67,000 employees. On August 6, 2021, United's CEO, Scott Kirby, announced that all United employees would be required to receive a COVID-19 vaccine within five weeks of the Food and Drug Administration (FDA) granting Emergency Use Authority (EUA) for a vaccine or five weeks after September 20, 2021, whichever came first. The FDA granted EUA for the Pfizer vaccine on August 23, 2021, meaning that all United employees were required to receive the first dose of the COVID-19 vaccine by September 27, 2021.

Employees who failed to upload a copy of their vaccination record to United's employee database by the specified date would be terminated unless they received a medical or religious exemption. United created an online system for employees to request religious or medical exemptions called "United's Reasonable Accommodation Process" (RAP). Proposed Am. Compl. ¶ 135. United required all exemptions to be requested by August 31, 2021. Employees granted an accommodation were placed on unpaid leave starting on October 2, 2021.

Anderson alleges that he "possess[es] sincerely held religious beliefs that [his] body is a temple, and that [his] Creator planned [his] existence upon [his] creation." *Id.* ¶ 106. The COVID-19 vaccines "violate[] [his] religious convictions" because, he alleges, they "will alter the biological aspects of [his] human body." *Id.* He alleges that the "vaccines are gene-altering experimental therapies" that introduce mRNA into his

body to "deliver[] metaphorical instructions that alter cell behavior." *Id.* ¶ 110.

Only three plaintiffs alleged that they requested a religious exemption. One plaintiff, Kevin Campbell, "was granted a religious exemption but was terminated shortly thereafter due to 'non-compliance.'" *Id.* ¶ 17. Another plaintiff, James Breitsprecher, "applied for a religious exemption, but it was denied." *Id.* ¶ 15. The third plaintiff, Paul Rozell, "made multiple attempts to apply for a religious exemption, but he purportedly missed United's arbitrarily imposed deadline." *Id.* ¶ 33. Those three plaintiffs allege that United terminated them for not receiving the COVID-19 vaccine. The remaining plaintiffs allege that they are an "employee or former employee of United." *Id.* ¶¶ 14, 16, 18–32, 34–41.

In September 2021, United sent postcards without a privacy envelope to employees who had not yet provided proof of vaccination. The postcards stated that "[o]ur records indicate that you have not uploaded your COVID-19 vaccine information to Flying Together" and that "[u]nvaccinated employees without a reasonable accommodation will be separated from United." *Id.* ¶ 154 (alterations in original). Also in September, United began requiring unvaccinated employees to wear facemasks.

On March 10, 2022, United offered employees with an accommodation who were on unpaid leave the opportunity to return to work by March 28, 2022. But unvaccinated employees still could not work on flights to certain countries. United told employees those countries had COVID-19 restrictions, but Anderson alleges that those countries in fact only required COVID-19 testing, not vaccinations. United also stated in March 2022 that employees must carry vaccine cards while they travel, which Anderson alleges discriminates against unvaccinated employees.

3

**Discussion**

Federal Rule of Civil Procedure 15(a) "provides that a court 'should freely give leave to amend when justice so requires.'" *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022) (alteration accepted) (quoting Fed. R. Civ. P. 15(a)(2)). "Regardless, a district court may deny leave to amend if amendment would be futile." *Id.* In evaluating futility, the Court applies "the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Id.* (internal quotation marks omitted).

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2019). The complaint must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**A.    EUA (count 1)**

In count one, Anderson claims that United violated 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) of the Federal Food, Drug, and Cosmetic Act (FDCA) by requiring its employees to receive the COVID-19 vaccine, wear facemasks, and take PCR COVID-19 tests. Anderson contends that under that provision, he "must be informed of the 'option to accept or refuse administration of the product, of the consequences, if any, of

refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.'" Pls.' Reply Br. at 11 (quoting 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III)).

The parties dispute whether the COVID-19 vaccines were fully FDA approved at the time of United's vaccine mandate. But the Court need not reach this issue because Anderson does not respond to United's contention that the EUA does not provide a private right of action. He has therefore forfeited the point. That aside, Seventh Circuit precedent is clear that "[t]he FDCA does not create a private right of action." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Thus, Anderson cannot bring a claim based on an alleged violation of the EUA provision of the FDCA. *See Jackson v. Methodist Health Servs. Corp.*, No. 22-CV-1307, 2023 WL 2486599, at *5 (C.D. Ill. Feb. 10, 2023) (dismissing the plaintiff's claim that her employer's COVID-19 vaccine mandate violated EUA in part "because the EUA does not provide for a private right of action").

**B.     Public disclosure of private facts (counts 2 and 3)**

In count two, Anderson asserts a claim for invasion of privacy by public disclosure of private facts. In Illinois, to state a claim for public disclosure of private facts, a plaintiff must allege that: "(1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person." *Johnson v. K Mart Corp.*, 311 Ill. App. 3d 573, 579, 723 N.E.2d 1192, 1197 (2000). In this claim, Anderson alleges that United gave publicity to "protected health information" by sending postcards to employees that had not yet uploaded their vaccination status and by requiring

unvaccinated employees to wear facemasks. Proposed Am. Compl. ¶ 208.

For starters, Anderson does not respond to United's contention that the postcards did not contain any private facts and were not publicly disclosed. He has thereby forfeited the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Regarding the facemask requirement, Anderson contends that disclosure of his vaccination status would be highly offensive to the reasonable person and that his relationships with his co-workers can qualify as a special relationship to satisfy the publicity element. But as United contends, a facemask requirement—or wearing a facemask—does not disclose a person's vaccination status: anyone, vaccinated or unvaccinated, may choose to wear a facemask. *See Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 838 (7th Cir. 2005) ("[A]lthough the sharing of the full test results likely would be highly offensive to a reasonable person, the Karrakers did not demonstrate that the actual information they claim was shared met that requirement."). Anderson did not respond to this point and therefore forfeited it. His claim for public disclosure of private facts fails for these reasons.

In count three, Anderson asserts a negligence claim that is based on the same allegations. Specifically, he alleges that "Defendants breached their duty of care [ ] by publishing Plaintiffs['] PHI in postcards and forc[ing] Plaintiffs to wear political symbols [i.e., facemasks]; effectively amplifying and broadcasting their PHI to other employees and consumers." Proposed Am. Compl. ¶ 214. The Court concludes that these allegations fail to state a claim for the same reasons as his invasion of privacy claim. Although Anderson contends that a negligence claim has different elements than an

6

invasion of privacy claim, he has made no effort to explain how those differences would cure the defects in his allegations.  And, in any event, Anderson does not respond to United's contention that the negligence claim is barred by the Illinois Workers' Compensation Act.  *See Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1038–39 (7th Cir. 2018) (noting that the Illinois Workers' Compensation Act "abrogates employer liability for all common law negligence claims") (internal quotation marks omitted).

### C.     Illinois Whistleblower Act (count 4)

In count four, Anderson contends that United violated section 20 of the Illinois Whistleblower Act.  That provision provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation."  740 ILCS 174/20.  "To state a claim under section 20 of the Whistleblower Act, a plaintiff must therefore sufficiently allege not only that he or she refused to participate in the activity but also that the activity violated a statute, rule, or regulation."  *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 42, 135 N.E.3d 891, 900–01.

Anderson alleges that United's vaccine mandate violated 14 C.F.R. § 61.53, which prohibits a pilot who holds a medical certificate from operating an airplane during a medical deficiency.  But he does not explain how this is so.  In particular, he does not allege that the COVID-19 vaccine causes a "medical condition that would make the person unable to meet the requirements for the medical certificate necessary for the pilot operation."  14 C.F.R. § 61.53(a)(1).  To the contrary, as United points out, the Federal Aviation Administration stated on December 12, 2020, December 19, 2020, and February 27, 2021, that "[h]olders of FAA-issued Airman Medical Certificates or Medical

7

Clearances may receive" the three COVID-19 vaccines discussed in Anderson's complaint. *See Novel Coronavirus (COVID-19) Update: Use of COVID-19 Vaccines by Pilots and Air Traffic Controllers*, Federal Aviation Administration, https://www.faa.gov/newsroom/novel-coronavirus-covid-19-update-0 (last visited August 31, 2023).

Because Anderson has not alleged that United's vaccine mandate violates any statute, rule, or regulation, his Whistleblower Act claim fails. *See Roberts*, 2019 IL 123594 at ¶ 45, 135 N.E.3d at 901.

**D.    Failure to accommodate (count 5)**

In count 5, Anderson asserts a Title VII claim based on a failure to accommodate. "To make out a *prima facie* case, an employee must demonstrate that: (1) an observance or practice that is religious in nature, and (2) that is based on a sincerely held religious belief, (3) conflicted with an employment requirement, and (4) the religious observance or practice was the basis or a motivating factor for the employee's discharge or other discriminatory treatment." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 883 (7th Cir. 2023), *vacated on other grounds*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023).

First, for the twenty-eight plaintiffs bringing this claim, only three have alleged that they applied for a religious accommodation. For the other twenty-five plaintiffs, the only individual allegation in the complaint is that they are an "employee or former employee of United." Proposed Am. Compl. ¶¶ 14, 16, 18–32, 34–41. This allegation falls well short of providing "a short and plain statement of the claim showing that the pleader is entitled to relief." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)

8

(quoting Fed. R. Civ. P. 8(a)(2)). It is impossible to tell from the complaint whether these twenty-five plaintiffs were affected by United's COVID-19 vaccine mandate, let alone how: they do not allege what accommodations, if any, they requested and how they were subsequently treated by United. See id. at 798 (affirming the district court's denial of leave to file an amended complaint where the complaint contained "a vague, confusing, and conclusory articulation of the factual and legal basis for the claims and a general 'kitchen sink' approach to pleading the case").

Anderson contends that individualized allegations are not required because United's vaccine policy "was applicable to all of its employee's [sic], including the Plaintiffs." Pls.' Reply Br. at 13. The Court notes, however, that the few individualized allegations that the complaint does contain, addressed below, indicate that United responded differently to those plaintiffs' religious accommodation requests. This belies Anderson's contention that all the plaintiffs were treated in the same manner.

In any event, his blanket allegations regarding United's policy are insufficient to state a claim for failure to accommodate. Although "[a] request for accommodation . . . is not a necessary condition of liability," a failure to accommodate claim still requires that the employer's "actions [were] taken with the *motive* of avoiding the need for accommodating a religious practice." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). The Supreme Court noted that the motive requirement may not be met "unless the employer at least suspects that the practice in question is a religious practice." *Id.* at 774 n.3. United's RAP program applied to both religious and medical exemptions. For the twenty-five plaintiffs who do not allege that they sought a religious exemption, the complaint does not allege any facts suggesting that United could have

9

suspected that they did not comply with the COVID-19 vaccination mandate because of a religious practice. Thus, with respect to those plaintiffs, United could not have acted with the motive of avoiding the need to accommodate their religious beliefs.

Moreover, United contends, and Anderson does not dispute, that a failure to accommodate claim requires the plaintiffs to have suffered an adverse employment action. *See E.E.O.C. v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996). The complaint does not specify what adverse actions, if any, the twenty-five plaintiffs experienced. The plaintiffs appear to allege that they faced what they contend was discriminatory treatment based on United's facemask requirements. Proposed Am. Compl. ¶¶ 155–156, 233. United argues that this is insufficient to constitute an adverse action. *See Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) ("[A]n adverse action must materially alter the terms or conditions of employment to be actionable under the antidiscrimination provision of Title VII."). Anderson does not respond to this contention, thereby forfeiting the point. *See Bonte*, 624 F.3d at 466.

In short, these twenty-five plaintiffs have failed to state a Title VII failure to accommodate claim. Thus, the Court denies their motion for leave to amend.

That leaves the three plaintiffs—Breitsprecher, Campbell, and Rozell—for whom the complaint does contain individualized allegations. Those allegations, however, still do not plausibly suggest that those plaintiffs' religious practices were "a motivating factor" in their termination. *Kluge*, 64 F.4th at 883. Breitsprecher alleges only that "[h]e applied for a religious exemption, but it was denied," without any indication regarding *why* it was denied. Proposed Am. Compl. ¶ 15. This is insufficient to plausibly allege that United acted "with the *motive* of avoiding the need for accommodating [his]

10

religious practice." *Abercrombie*, 575 U.S. at 773–74 ("An employer who has actual knowledge of the need for an accommodation does not violate Title VII by refusing to hire an applicant if avoiding that accommodation is not his *motive*."). The denial may have been for any number of reasons related to the neutral requirements of United's RAP process, which applied both to those requesting religious and medical exemptions. Breitsprecher's bare allegation is therefore insufficient to state a claim for failure to accommodate. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").

The same is true for Campbell and Rozell. Campbell alleges that "[h]e was granted a religious exemption but was terminated shortly thereafter due to 'non-compliance.'" Proposed Am. Compl. ¶ 17. Campbell offers no clue what "non-compliance" means in this context and does not allege that his "non-compliance" had anything to do with his religious practices. Given that United *did* grant Campbell's request for a religious accommodation, there's no way to draw a plausible inference from the complaint's allegation that Campbell's need for an accommodation was "a motivating factor for [his] discharge." *Kluge*, 64 F.4th at 883. Thus, he has failed to allege a failure to accommodate claim.

Similarly, Rozell alleges that "[h]e made multiple attempts to apply for a religious exemption, but he purportedly missed United's arbitrarily imposed deadline." Proposed Am. Compl. ¶ 33. Rozell does not provide any factual detail, however, to support his conclusory allegation that the specific deadline he missed was arbitrary. Faced with the global COVID-19 pandemic, it is not reasonable to infer that United's simple imposition of a deadline was arbitrary or discriminatory. Rozell's allegation that his request for an

11

accommodation was denied due to his failure to meet a neutral deadline suggests that his religious practices were not "a motivating factor" in the denial of his religious exemption or his subsequent termination; at a minimum there is no basis for a plausible inference to the contrary.

In sum, these three plaintiffs have failed to allege viable failure to accommodate claims, and their motion for leave to amend is therefore futile.

### E. Disparate treatment (count 6)

In count six, Anderson asserts a Title VII claim based on disparate treatment. "Title VII [ ] prohibits employers from discriminating against an employee on the basis of the employee's religion." *Porter*, 700 F.3d at 954; *see* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . *because of* such individual's . . . religion . . . .") (emphasis added). United contends that Anderson has failed to allege that United discriminated against him because of his religion. The Court agrees.

A disparate treatment claim requires a plaintiff to allege "intentional religious discrimination." *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003); *see also Watkins v. City of Chicago*, No. 20-1750, 2023 WL 155450, at *3 (7th Cir. Jan. 11, 2023) ("Proving disparate treatment requires plaintiff-specific evidence of discriminatory intent."); *cert. denied*, 143 S. Ct. 2564 (2023). Anderson specifically alleges in his complaint that he was treated differently "as compared to similarly situated employees who received one of the three" COVID-19 vaccines, Proposed Am. Compl. ¶ 233, *not* because of his religious beliefs. Anderson has therefore not alleged a viable disparate treatment claim. *See D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988

12

(MKV), 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023) (dismissing disparate treatment claim where the plaintiff alleged "she was terminated '*because* Northwell insisted that she take a vaccine'—*not* because of her religion") (alteration accepted).

Anderson argues that the fact that United discriminated against him based on vaccination status is sufficient to allege discrimination based on religion because, he contends, his religion prohibits him from getting vaccinated. But "[t]o show discriminatory intent under Title VII, a plaintiff must demonstrate that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (alterations accepted) (quoting *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir.2000)). Anderson does not allege any "factual content to support an inference that the [vaccine mandate] *program itself* was adopted *because of* its adverse effects on" Anderson's religious beliefs. *Id.*

F.  **Hostile work environment (count 7)**

"To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). United contends that this claim is futile because Anderson has not alleged sufficiently severe harassment or that any harassment was based on religion. The Court agrees.

The only non-conclusory allegations regarding actions that Anderson contends

13

constituted harassment involve United's facemask and vaccine card requirements. "[T]o rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* working environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (internal quotation marks omitted). Anderson's allegations that he must wear a facemask or carry a vaccine card are insufficient to amount to severe harassment. *See Leake v. Raytheon Techs. Corp.*, No. CV-22-00436-TUC-RM, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023) ("Plaintiffs' allegation that a hostile work environment was created through the requirement that vaccination-exempt employees wear facial protection and submit to weekly COVID-19 testing for a virus that has claimed the lives of over one million Americans, and counting, is shocking to the Court.").

Moreover, for the same reasons explained above, Anderson has not alleged that the harassment he faced was based on his religion. *See Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1117 (7th Cir. 2022) (holding that to succeed on a claim for gender-based hostile work environment, the alleged "demeaning, ostracizing, or even terrorizing conduct must still be related to gender") (internal quotation marks omitted). Anderson's allegations focus on what he refers to as the "political symbol" of being forced to wear a facemask. *See, e.g.*, Proposed Am. Compl. ¶ 155. But, as explained above, "[w]earing masks [ ] doesn't signify to others that the individual religiously objects to the vaccination; . . . they could be a vaccinated individual who chooses to take the extra (and unrequired) precaution to wear a mask." *Klaassen v. Trs. of Indiana Univ.*, 549 F. Supp. 3d 836, 890 (N.D. Ind. 2021), *vacated as moot*, 24 F.4th 638 (7th Cir. 2022).

Thus, Anderson has failed to state a hostile work environment claim.

## G.    Genetic Information Non-Discrimination Act (counts 8 and 9)

In counts eight and nine, Anderson claims that United violated the Genetic Information Non-Discrimination Act ("GINA"). GINA prohibits an employer from discriminating against an employee "because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). "Genetic information" is defined as "information about (i) such individual's genetic tests; (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. § 2000ff(4)(A). A "genetic test," in turn, "means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A).

Anderson alleges that United violated GINA by discriminating against him based on his vaccination status.[2] United contends that a COVID-19 vaccine is not "genetic information," and therefore does not implicate GINA. The Court agrees with United. Although Anderson alleges that the COVID-19 vaccine is a "gene therapy," Am. Compl. ¶ 83, the statute does not define "genetic information" to include anything that may relate to genes. *See Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 826 (5th Cir. 2015) ("[A]n employer does not violate GINA through 'the use, acquisition, or disclosure

---

[2] In his complaint, Anderson had also alleged that United violated GINA by requiring COVID-19 tests, but he does not address this claim in his brief in reply to the motion for leave to amend, and thus he has forfeited the point. In any event, Anderson's allegations are insufficient to state a GINA claim. Anderson alleges that COVID-19 PCR tests "amplify small segments of DNA which is genetic material." Proposed Am. Compl. ¶ 302. But he fails to allege that the PCR test "detects genotypes, mutations, or chromosomal changes," which is necessary to meet the definition of a "genetic test." 42 U.S.C. § 2000ff(7)(A).

of medical information that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis.'" (quoting 42 U.S.C. § 2000ff-9).

Rather, for Anderson's allegations to implicate GINA, an individual's COVID-19 vaccine must be a "genetic test." *See* 42 U.S.C. § 2000ff(4)(A). But Anderson has not alleged that a COVID-19 vaccine is an "analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A). Thus, Anderson has not alleged that United violated GINA. It appears that every district court to address this issue thus far has held that COVID-19 vaccination requirements do not implicate GINA. *See, e.g.*, *Harden v. Honeywell Int'l, Inc.*, No. 1:23-CV-00176-JPB, 2023 WL 3310172, at *4 (N.D. Ga. May 8, 2023) (holding that "allegations that the COVID-19 vaccine is 'gene-editing' or 'genetic therapy'" "do not show that vaccination for COVID-19 meets the definition of 'genetic information' that is set forth in GINA"). Anderson does not point to any contrary authority.

Moreover, the EEOC has also concluded that "[r]equiring an employee to receive a COVID-19 vaccination administered by the employer or its agent would not implicate Title II of GINA unless the pre-vaccination medical screening questions include questions about the employee's genetic information, such as asking about the employee's family medical history," which Anderson does not allege. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-

rehabilitation-act-and-other-eeo-laws#K.14 (last visited August 31, 2023).  The Seventh Circuit "frequently look[s] to EEOC guidelines for guidance in discrimination cases, which, while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  *Karraker*, 411 F.3d at 835 n.2 (internal quotation marks omitted). Anderson has not argued any reason why the EEOC's guidelines would not be persuasive in this case.

In short, the Court concludes that Anderson has not alleged viable GINA claims.

**H.     Constitutional claims (count 10)**

In count ten, Anderson asserts various constitutional claims against United under section 1983 or, in the alternative, under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  The claims lack merit under both theories.

"Section 1983 creates a private right of action against persons who, acting under color of state law, deprive a plaintiff of rights secured by the federal Constitution and laws."  *Telford v. Aurora Health Care, Inc.*, No. 22-3038, 2023 WL 5275918, at *1 (7th Cir. Aug. 16, 2023).  Thus, "[t]o state a § 1983 claim, [Anderson] must sufficiently allege that [United] was acting under color of state law—that is, exercising power made possible only because [United was] clothed with the authority of state law."  *Reardon v. Danley*, 74 F.4th 825, 828 (7th Cir. 2023) (alterations accepted) (citations and internal quotation marks omitted).  Anderson contends that United acted as a state actor under section 1983 because it "shared in the federal government's unconstitutional goal of forcing vaccinations on their employees."  Pls.' Reply Br. at 15.

For starters, section 1983 does not apply in this case because Anderson's

17

allegations center exclusively on the federal government, not the state. "Section 1983 addresses only *state* action." *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 697 (7th Cir. 2017); *see also Akbar v. Interstate Realty Mgmt. Co.*, No. 22-1598, 2022 WL 4286498, at *2 (7th Cir. Sept. 16, 2022) ("[Section] 1983 does not reach federal actors."). "Actions on behalf of the federal government might make one a federal actor . . . , but that would require an entirely different legal theory." *Marian Cath. High Sch.*, 852 F.3d at 696–97 (affirming the dismissal of section 1983 claims "for failure to allege the essential element of state action"); *see also Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023) ("Section 1983, however, deals with violations by those acting 'under color of State' law. It does not generally cover federal officials.") (alteration accepted).

*Bivens* also does not apply here. The Supreme Court has declined to extend *Bivens* "to confer a right of action for damages against private entities acting under color of federal law." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *see Ciraci*, 62 F.4th at 287 (observing that *Bivens* would not apply to the plaintiffs' suit against their private employer's COVID-19 vaccine requirements). Anderson does not address *Bivens* in his brief.

In one sentence, Anderson contends that the "sorts of circumstances" outlined in *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019), for when a private entity can qualify as a state actor are "exactly what the FAC alleges." Pls.' Reply Br. at 16. In *Manhattan*, the Supreme Court noted that "a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function, (ii) when the

18

government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity." *Manhattan*, 139 S. Ct. at 1928 (citations omitted). But Anderson does not explain which of these circumstances applies in this case or why. The Court therefore concludes that Anderson has forfeited this argument. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("Seventh Circuit precedent is clear that perfunctory and undeveloped arguments . . . are waived.") (internal quotation marks omitted).

Even if the argument were not forfeited, it would fail on the merits. "A vaccine mandate does not count as a public function traditionally handled just by the State." *Ciraci*, 62 F.4th at 282 (internal quotation marks omitted). Anderson does not allege that the federal government "coerced or participated in [United]'s decision-making [about its vaccine mandate] to the extent required to trigger state actor status" or that United "partnered, conspired, or entered into a joint venture with federal officials." *Id.* at 282–83 (alteration accepted) (internal quotation marks omitted). Anderson's allegations that United did business with the federal government "do[es] not create the requisite entwinement." *Id.* at 283 ("The same could be said of many private companies that do business with the federal government and yet have long been treated as private rather than public actors.").

Because Anderson has not sufficiently alleged that United could be liable under section 1983 or *Bivens*, the Court need not address Anderson's underlying constitutional claims. (The Court notes, however, that Anderson in his brief failed to respond to United's contention that his constitutional claims lack merit and thus forfeited that point as well.)

I.   **Intentional and negligent infliction of emotional distress (counts 11 and 12)**

United contends that Anderson's intentional and negligent infliction of emotional distress claims should be dismissed for several reasons. In his brief, Anderson fails to respond to any of these points. Thus, he has forfeited the claims. See *Bonte*, 624 F.3d at 466; *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

## Conclusion

For the reasons stated above, the Court denies plaintiffs' motion for leave to amend [dkt. no. 23]. Unless plaintiffs file, by September 26, 2023, a proposed amended complaint stating at least one viable claim over which the Court has jurisdiction, the Court will enter judgment in favor of defendant. The case is set for a telephonic status hearing on September 29, 2023 at 8:55 a.m., using call-in number 888-684-8852, access code 746-1053.

```
                                          _____
                                          MATTHEW F. KENNELLY
                                          United States District Judge
```

Date:  September 5, 2023