UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS ANDERSON, *et al.*,

       Plaintiffs,                                Case No. 1:23-CV-00989

v.

                                             Honorable Matthew F. Kennelly

UNITED AIRLINES, INC., *et al.*,

       Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT**

**ARGUMENT**

**I.  Plaintiffs' Proposed Amendments are Not Futile**

The Defendants are improperly asserting that the Plaintiffs' SAC is futile because there was no new material included in the amendment or new allegations. However, the first 100 paragraphs of the FAC/SAC contain materially significant ameliorations from the paragraphs contained in the original complaint.  Specifically, the FAC/SAC detail various burdens which were only exacted against the unvaccinated United employees that had religious exemptions.

Conversely, Defendants' motion simply states that Plaintiffs' FAC/SAC is futile for the same "reasons discussed in United's April 21 Motion to Dismiss."  Defendants make no attempt to specifically address the allegations contained in the FAC/SAC. Accordingly, Defendants cannot prevail on their motion because the "reasons discussed in United's April 21 Motion to Dismiss" simply are not applicable to the allegations presented in the FAC/SAC.

In other words, this is just another of Defendants' attempts to allege "process issues" when the Defendants' illegal actions documented in the Plaintiffs' amended complaint are

clearly articulated. Plaintiffs are U.S. citizens and thereby protected under the Constitution against violations. Employees are not bereft of rights, as shown by the numerous EEOC and other cases where employee rights have been bolstered again and again against violative "corporate policy."

A.  **Emergency Use Authorization (EUA) establishes Plaintiffs are Entitled to a Private Right of Action**

1.  Plaintiffs Are Entitled To A Private Right Of Action.

These so-called vaccines are investigational medical products, and as such, employees reserve the right to refuse such experimental drugs. No company or government may mandate an investigational medical product upon its employees. The law is that Plaintiffs are endowed by their Creator with inalienable rights to life, liberty and the pursuit of happiness. This does not exclude Plaintiffs' bodily autonomy. Further, federal law protects individuals against this exact situation. Each Plaintiff suffered harm and discrimination at the heavy hand of United. United forced an illegal injection exclusive to US-based mainline employees while excluding US-based subsidiary employees and employees contracted to work alongside mainline employees. United also excluded other airline company employees and the general public from any mandate.

Reference court's order regarding no private right of action under FDCA by plaintiffs. Therefore, 21 USC 360 applies, regardless of Defendants' contention. Defendants' case law only centered around section 343 of the FDCA which is irrelevant with regard to 21 USC 360. *Doe v. Rumsfeld* No. CIV.A.03-707(EGS) 341 F. Supp.2d 1 (2004) created a permanent injunction for the Anthrax EUA product to "all persons" after having issued a preliminary injunction of the Department of Defense's "involuntary anthrax inoculation program." This order, enumerated

from 10 USC 1107a, created Section 21 USC 360 bbb3 in the FDCA which not only applies to the armed forces of the United States, but any individual United States citizen thereof. -This *Doe v. Rumsfeld* order's permanent injunction allowed any individual United States citizen the preemptive inalienable right to not only refuse an investigational medical product, i.e. EUA covid shots, but upon refusal, no punitive action, "no penalty" would be taken (reference also the precedent-setting 2005 Federal register or 21 CFR 50.25 pertaining to informed consent and consequences medical in nature only (not job loss)).

The *Jackson v. Methodist Health Servs. Corp.*, No. 22-CV-1307, 2023 WL 2486599, at *5 (C.D. Ill. Feb. 10, 2023) argument that there is no private right of action fails because the order doesn't address the context of consequences section of 21 USC 360 bbb3, 2005 Federal register, or 21 CFR 50.25. Consequences are not defined in 21 USC 360bbb3. Whereas, 21 CFR provides the context for consequences and clearly shows it has nothing to do with job loss. Most importantly, that code, 21 CFR 50.25, is actually about informed consent in human protection. If the consequences section were taken into account, no punitive action would have been considered per the law, yet they were overlooked. The "no private right of action" argument fails due to the aforementioned arguments. Plaintiffs request the court completely implement all of these preemptive statutes.

2. Plaintiffs Have The Option To Accept Or Refuse Administration Of A Medical Product.

Additionally, as cited in the Plaintiff's 8/7/2023 Document #29, the FAC/SAC presents in paragraph 3, the Defendants' willful, wanton, and blatant disregard for a core legal requirement—that every individual must be informed of the "option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks."

3

This mandate was unambiguously issued while these drugs were unmistakably categorized as experimental (EUA). *See* FAC, Doc. No. 23, at ¶¶ 87-88). The FAC/SAC details the negative employment actions that Plaintiffs faced for refusing the experimental vaccine. In the Defendants' Opposition to Plaintiffs' Motion for Leave to Amend Complaint, on page 12, the Defendants falsely claim they did not require Plaintiffs to receive a vaccination pursuant to an EUA-authorization, but that Plaintiffs could have chosen to receive a fully FDA approved vaccine. This statement is entirely inaccurate. No COVID 19 vaccines have received FDA approval.  The vaccines that Defendants mandated their employees receive were not "FDA approved" by the FDA but merely authorized under the EUA (*see* FAC, Doc. No. 23, at ¶¶ 88-91), necessitating that Defendants comply with the provisions of 21 U.S.C. 360bbb-3(e)(1)(A)(ii)(III), which they did not do.  *See Apter v. Dept of Health & Human Svc*, No. 22-40802 (5th Cir. 2023)

**B.     Plaintiffs are Entitled to Protection of Private Facts from Public Disclosure Through the Doctrine of Invasion of Privacy**

1.   United's Contention That The Postcards Did Not Contain Any Private Facts And Were Not Publicly Disclosed Is Not True.

As stated in the Plaintiffs' 8/7/2023 Doc. #29 response: To plausibly state a claim for invasion of privacy for public disclosure of private facts, Plaintiffs need to establish "the dissemination of truthful private information which a reasonable person would find objectionable."  *See Guarino v. Mandel*, 327 So.3d 853, 863 (Fla. Ct. App. 2021).  "Claims based on this tort generally must be made to the public at large or to so many persons that the matter is substantially certain to become public knowledge."  *Id*. They must prove that there was publicity of private information by the Defendants to the public which would be highly offensive

to a reasonable person." *See Cordts v. Chi. Tribune Co.*, 369 Ill. App. 3d 601, 607 (Ill. App. Ct. 2006).

It is clear that disclosing an individual's health information to consumers and employees without his consent is highly offensive to a reasonable person. The disclosure violates the individual's right to privacy, and can have negative consequences for their employment, safety, and personal life. United identified "unvaccinated" employees on staffing reports in addition to sending open postcards through the mail for anyone to see. Thus, the conduct this Complaint alleges against the Defendants is both highly offensive and deserving of legal action to protect the Plaintiffs' individual rights to privacy.

Under Illinois law, to state a claim for public disclosure of private facts, a plaintiff must first allege publicity was given to the disclosure of private facts. The post cards contained employee name, address, vaccine status, employer's name and punitive action if vaccine status remains unchanged. Finally, the matter made public would be highly offensive to a reasonable person. Not only were names and health status linked directly to names and addresses, but punitive action regarding a chosen health status is plainly unconscionable. If any company required a woman to get an abortion to continue working at her place of employment, and sent an open postcard saying she would be fired if she didn't comply with that or any other medical procedure, the general public would be appalled. This is no different.

With respect to masks, frankly, any person could choose to wear one if they wished. However, there was no choice for the "unvaccinated." A "vaccinated" person could actually choose whether or not they included themselves in the "unvaccinated" group. This also satisfies the criteria for disclosure of public facts due to the fact that the employees in question were required to wear name tags per company policy and were in clear view of the public. Today, the

Cochran report on masks reveals how clearly offensive a mask mandate is to the general public.[1] Case law regarding a California city's firefighters' privacy rights supports this conclusion as well. *See Firefighters4Freedom v. City of L.A.*, No. B320569 (Cal. Ct. App. Jun. 21, 2023). The court concluded that the firefighters had a protected privacy interest in their bodily integrity and "[c]ompulsory vaccination constitutes a serious invasion" of that right. California "has never required that city employees get a shot to keep their jobs before now" and "has never disciplined, much less fired, a firefighter for declining an injection." It "did not consider alternative measures that have a lesser impact on the firefighters' privacy rights," even though "[m]any such measures exist," and the mandate does not serve its stated purpose. The city did "not have the power to put [C]ity firefighters who do not follow the City vaccine mandate on unpaid leave pending termination proceedings."

### C.    Plaintiffs Rights are Protected Under the Illinois Whistleblower Act

In the Illinois Whistleblower's Act Count IV, Plaintiffs make plausible allegations that each was punished for refusing to participate in an activity that would result in a violation of a state or federal law, rule, or regulation. *Roberts v. Bd. of Trs. of Cmty. Coll. Dist.*, No. 508, 135 N.E. 3d 891, 900– 01 (Ill. 2019). The specific regulation cited is 14 C.F.R. § 61.53, which requires a medical certificate for anyone who operates an aircraft. *See* FAC, Doc. No. 23, at ¶ 218. Plaintiffs have alleged that Defendants punished them for refusing to participate in an activity that was done in violation of this regulation, which meets their minimal burden at this stage of pleading. The company may not interfere with the pilot regarding how the pilot maintains his or her medical certification. Any encroachment into that contract violates

---

[1] Jefferson T, Dooley L, Ferroni E, Al-Ansary LA, van Driel ML, Bawazeer GA, Jones MA, Hoffmann TC, Clark J, Beller EM, Glasziou PP, Conly JM. Physical interventions to interrupt or reduce the spread of respiratory viruses. Cochrane Database of Systematic Reviews 2023, Issue 1. Art. No.: CD006207. DOI: 10.1002/14651858.CD006207.pub6.

fundamental requisites for pilot certification. That certification is a prerequisite for employment and is preemptive. The certification process rests solely on the pilot and the FAA-accredited Medical Examiner, and the employer may not encroach nor infringe into the certification process. Defendants did exactly this when they mandated a medical procedure (which was prohibited by FAR 61.53) which could affect the ability to secure the medical certification.

United avoids the problem completely and cites a "memo" by the FAA that does not supersede established law. To operate under the privileges of an Airline Transport Pilot (ATP) certificate, each holder must pass a medical examination by an Aviation Medical Examiner (AME) designated by the FAA and must follow FAA guidance set forth below. United requires an ATP certificate holder to pass and hold a first-class medical certification.

The COVID-19 shots are both investigational/experimental as described in Plaintiffs' FAC/SAC and were never approved. So even if United argues the FAA has given the green light via a memo, such memo contradicts established rules for Aviation Medical Examiners. Any pilot who holds an FAA medical and complied with United's mandate is in violation of regulations for "taking medication or receiving other treatment for a medical condition that results in the person being unable to meet the requirements for the medical certificate necessary for the pilot operation." See 14 CFR 61.53 (a)(2).

### D.  Defendants 'Failure to Accommodate

The Supreme Court ruled recently in *Groff v. DeJoy*, that an accommodation is only to be a *de minimus* burden on the company. *See* 143 S. Ct. 2279 (2023). All employees who were placed arbitrarily on unpaid leave or required to mask for an unreasonable period of time at work under exemptions had been working prior to the mandate.  Nothing of consequence occurred on 26 Sep 2021 that suddenly made it more burdensome for the employer to employ non-vaccinated

persons on 27 Sep 2021. The claim that necessary accommodations were costly was arbitrary and capricious. There was no undue burden prior to the mandate and therefore nothing would have changed had Plaintiffs kept working. In fact, the company placed an undue burden on Plaintiffs before the mandate with arbitrary "vaccine destination" trips which the Plaintiffs could not bid to fly. And if they were assigned any of these destinations, they would be stripped of the entire trip and stripped of any pay associated with that trip with no way to recover that lost pay. Defendants' undue burden in this case is unsubstantiated and deprived the Plaintiffs of their livelihoods before, during and after the mandate. This also demonstrates the retaliatory nature of the environment at United.

Defendants claim plaintiffs failed to exhaust administrative remedies. Every Plaintiff applied for either a religious or medical exemption and every Plaintiff with exception of David Catala established a claim with the Equal Employment Opportunity Commission (EEOC). All Plaintiffs have received or are in the process of receiving their right-to-sue letters from the EEOC. The EEOC has determined it has no jurisdictional reach when it comes to EUA law violations by Defendants. Defendants' claim that Plaintiffs have not exhausted other remedies is patently false. Plaintiffs have engaged in the EEOC process, and the EEOC has determined it has no authority regarding this complaint. In *Exby-Stolley v. Board of County Commissioners, Weld County Colorado*, which concerned an employee suing her employer for failing to accommodate her disability, the employer compelled her to resign. 979 F.3d 784, 789 (10th Cir. 2020).

Finally, an Arkansas federal district court recently denied the employer's summary judgment motion on the plaintiff's failure to accommodate claim under the Americans with Disabilities Act. *Orr v. City of Rogers*, 232 F. Supp. 3d 1052 (W.D. Ark. Feb. 3, 2017). In

denying summary judgment, the Court held that, "a failure to accommodate is, in and of itself, a form of discrimination under the ADA." *Id*.

As stated in the complaint, the EEOC abrogated any responsibility regarding the legal implications of the EUA. When the EEOC did so, it telegraphed that it would not be getting involved with any employee actions related to vaccine mandates that relied on the EUA for legal support.

Such a communication can reasonably be interpreted to be an announcement by the EEOC that the normal administrative remedies were preemptively exhausted insofar as the EUA was involved.

> **E.  Plaintiffs Experienced Disparate Treatment**

Both disparate-treatment and disparate-impact claims are cognizable under the ADA. *See* 42 U. S. C. §12112(b) (defining "discriminate" to include "utilizing standards, criteria, or methods of administration ... that have the effect of discrimination on the basis of disability" and "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability"). Because "the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes," *Texas Dept. of Community Affairs v. Burdine*, 450 U. S. 248, 252, n. 5 (1981), courts must be careful to distinguish between these theories.

The SAC details United's company policy that was applicable to all employees, including the Plaintiffs. Other than the terminations of certain Plaintiffs, which is specifically described in the SAC where applicable, all Plaintiffs experienced the exact same failures to accommodate, disparate treatment, and creation of a hostile work environment in the manner described in the

SAC. In other words, this is not a complaint in which each plaintiff was discriminated against because of their religious beliefs in a unique way. Instead, the SAC concerns a situation in which every Plaintiff was discriminated against similarly because of their religious beliefs in the exact same manner, pursuant to company policy that was applicable to all employees. Thus, the SAC achieves the end of individualizing the Plaintiffs' claims.

In a recent Supreme Court case, the Court issued an unsigned 5-4 opinion expressing profound concerns regarding the disparate treatment of religious establishments, and suggesting they were singled-out for "especially harsh treatment" compared to other essential businesses. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 141 (2020). Justice Gorsuch voiced concern over the erosion of First Amendment freedoms in crisis. He admonished the Court to not "cut the Constitution loose during a pandemic." Furthermore, in *Griggs v. Duke Power Co.*, 401 U.S. 424, 3 EPD ¶ 8137 (1971), the Supreme Court announced the principle that employment policies and practices which have an adverse impact on minorities and women and are not justified by business necessity and constitute illegal discrimination under Title VII.

### F. Plaintiffs Experienced a Hostile Work Environment

Given the foregoing disparate treatment set forth in the facts herein, Defendants' conduct had a disparaging impact on Plaintiffs, which led to their termination, early retirement, placement on unpaid leave, constructive discharge or, for those Plaintiffs who were allowed to work, a hostile work environment accompanied by harassment. Plaintiffs maintain that adequate details have been provided to satisfy the elements for claims of religious discrimination due to disparate treatment, failure to provide accommodations, harassment, and the creation of a hostile work environment.

To be actionable as "abusive work environment" harassment, conduct need not "seriously affect [an employee's] psychological wellbeing" or lead the plaintiff to "suffe[r] injury." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment. This standard requires an objectively hostile or abusive environment - one that a reasonable person would find hostile or abusive - as well as the victim's subjective perception that the environment is abusive.

As was made clear in *Meritor Savings Bank, FSB* v. *Vinson*, 477 U. S. 57 (1986), this language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment.

Defendants' actions against Plaintiffs, while violating core emergency use authorization law, have also violated Title VII's prohibition against discrimination, harassment and the perpetuation of a hostile work environment.

### G.  Defendants Violated the Genetic Information Non-Discrimination Act

As stated in the Plaintiffs' 8/7/2023 Doc. ¶ 29, and as explained in the FAC ¶ 83, the mRNA inserted into the cell nucleus serves as instructions or a recipe for the creation of the spike protein that triggers an immune response. Such mRNA is a synthetic surrogate of the body's genetic information. Thus, the FAC/SAC adequately alleges a cause of action under the Genetic Information Non-Discrimination Act (GINA) because these vaccines operate by means of altering a vaccinated individual's genetic information. *See* 42 U.S.C. §2000f-1(a)(1), (2).

For instance, Moderna's November 2018 Securities and Exchange Commission (SEC) registration statement confirms that its mRNA injections are defined as gene therapy, clearly stating that "mRNA is considered a gene therapy product by the FDA." The September 2019 SEC filing for BioNTech (whose mRNA technology is used in the Pfizer vaccine) is equally clear, stating on page 21: "In the United States, and in the European Union, mRNA therapies have been classified as gene therapy medicinal products."

So, in the U.S. and Europe, mRNA therapies, as a group, are classified as "gene therapy medicinal products." There's simply no way around this. The FDA's guidance for the human gene therapy products industry, published in January 2020, also classified mRNA injections as gene therapy.[2]

### H. Plaintiffs Have Pleaded Cognizable Constitutional Claims

Plaintiffs have pleaded cognizable Constitutional claims. Plaintiffs' have satisfied the requirements for a valid *Bivens* case claim and a § 1983 Cause of Action against United. Plaintiffs have alleged and can prove that United's management has been so enmeshed with the federal government that they are undoubtedly a state actor. All the wrongful acts committed by the Defendants as an employer were predicated on their unlawful discrimination, harassment, and retaliation against Plaintiffs based on Plaintiffs' lawful exercise of their sincerely held protected religious beliefs as employees. All of which stems from Plaintiffs' inherent right to refuse medical procedures enumerated in the 14th Amendment (U.S. Const. Amend. 14, §1). *See Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990) ("Petitioners also adumbrate in their brief a claim based on the Equal Protection Clause of the Fourteenth Amendment to the effect that Missouri has impermissibly treated incompetent patients differently from competent

---

[2] https://www.fda.gov/media/113768/download

ones); *Cleburne v. Cleburne Living Center, Inc.*, *473 U.S. 432*, 439 (1985) (holding, that the clause is "essentially a direction that all persons similarly situated should be treated alike").

Also, the informed consent doctrine has become firmly entrenched in American tort law. *See* Dobbs, Keeton, & Owen, supra, 32, pp.189192; F. Rozovsky, Consent to Treatment, A Practical Guide 198 (2d ed. 1990); L. Tribe, American Constitutional Law 1511, p.1365 (2d ed. 1988).[3]

Defendants argue United is not a state actor but fail to disclose the standard used for a private actor to act under color of law. This standard simply required that United and the Biden Administration have a "meeting of the minds" and reach an understanding to deny plaintiffs a Constitutional right. *See Wilson v. Warren Cnty.*, 830 F.3d 464 (7th Cir. 2016); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hanania v. Loren – Maltese*, 212 F.3d 353, 356 (7th Cir. 2000) (requiring a showing of "a concerted effort between" a private actor and state actor and that a state actor and private actor "reached an understanding to deprive the plaintiff of her constitutional rights"); *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) ("A requirement of the joint action charge ... is that both public and private actors share a common, unconstitutional goal."). Thus, as long as the private actor shares the state actor's unconstitutional goal and cooperates with the state actor in pursuit of this goal, the private actor can be found to be acting under color of state law under § 1983. *See Wilson*, 830 F.3d at 464. Plaintiffs have well established these allegations. Defendants telegraphed that they shared in the federal government's unconstitutional goal of forcing vaccinations on their employees, regardless of legal consequence. Defendants

---

[3] In *Superintendent of Belchertown State School* v. *Saikewicz*, 373 Mass. 728, 370 N.E. 2d 417 (1977), the Supreme Judicial Court of Massachusetts relied on both the right of privacy and the right of informed consent to permit the withholding of chemotherapy from a profoundly-retarded 67-year-old man suffering from leukemia.

also incorrectly cite case law *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023) in order to falsely argue that § 1983 has no applicability to the case. In reality, the court in *Ciraci* never said that § 1983 cannot be utilized in COVID cases or against private actors; instead, the court described the situations in which a state actor can be acting under color of law in COVID cases. *See Id.*, *62 F.4th at 287.* Those circumstances include: "(1) when the private entity performs a traditional, exclusive public function; (2) when the government compels the private entity to take a particular action; (3) when the government acts jointly with the private entity." *Id.*; *see Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928 (2019). These sorts of circumstances are exactly what the complaint alleges.

Courts must resume applying the Free Exercise Clause. Today, a majority of the Court makes this plain. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U. S. __ (2020).

## I.    Intentional and Negligent Infliction of Emotional Distress

Plaintiffs 'claim for negligence should not be dismissed. Defendants were either intentionally or recklessly negligent in their failure to provide reasonable care to the plaintiffs. Defendants disclosed plaintiffs PHI, fostered a hostile work environment, and coerced plaintiffs to violate religious convictions *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. Dist. Ct. App. 1993), *Bartsch v. Costello*, 170 So. 3d 83, 84 (Fla. Dist. Ct. App. 2015)

These allegations are sufficient to state a valid claim. Therefore, the claim for negligence should not be dismissed.

## CONCLUSION

Because of the viable claims and reasons stated above, the Court should grant Plaintiffs' motion for leave to file an amended complaint.

Respectfully Submitted,

14

/s/ *Kevin F. O'Connor*
Kevin F. O'Connor,
Local Counsel
No. 6300449
kevin@oconnor-connor.com
O'Connor | O'Connor, P.C.
110 E. Schiller St., Ste 212
Elmhurst, IL 60126
Tel. 630-903-6397


*/s/ John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com


## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify and attest that on November 10, 2023, I caused this document to be uploaded and filed in this case, using the electronic filing system established by the Court. By doing so, I automatically served the document on all counsel of record.


/s/ *Kevin F. O'Connor*
Kevin F. O'Connor