**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS ANDERSON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 989** |
| | ) | |
| **UNITED AIRLINES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Thomas Anderson and the twenty-seven other plaintiffs in this case are pilots, flight attendants, and ground staff who work at United Airlines, Inc. The plaintiffs filed suit against United Airlines, its CEO Scott Kirby, and various other United executives and board members (collectively, United), asserting twelve claims arising out of United's COVID-19 vaccine mandate. Before the Court is the third version of the plaintiffs' complaint. For the following reasons, the Court denies the plaintiffs' motion to file an amended complaint and dismisses all of the plaintiffs' claims.

**Background**

The Court assumes familiarity with the facts of this case and its ruling on the plaintiffs' previous motion to amend. *See Anderson v. United Airlines, Inc.*, No. 23 C 989, 2023 WL 5721594 (N.D. Ill. Sept. 5, 2023). The facts as alleged in the second proposed amended complaint are unchanged in all relevant respects. To summarize, in August 2021, United implemented a vaccine mandate that required all United employee

to receive the first dose of the COVID-19 vaccine by September 27, 2021. Employees who failed to upload a copy of their vaccination record to United's employee databased by the specified date would be terminated unless they received a medical or religious exemption. United required all exemptions to be requested by August 31, 2021. Employees granted an accommodation were placed on unpaid leave starting on October 2, 2021.

The plaintiffs allege that they are current or former employees of United and that receiving the COVID-19 vaccine would violate their "sincerely held religious beliefs that their body is a temple, and that their Creator planned their existence upon their creation." Proposed Am. Compl. ¶ 106. They claim that the COVID-19 vaccines are "gene-altering experimental therapies" that lead to "a fundamental change in their genetic design that their Creator imparted within them." *Id.* ¶ 110. Only three of the plaintiffs allege that they applied for a religious exemption from United's vaccination requirement. *See id.* ¶¶ 14, 15, 17. One plaintiff alleges that he attempted to apply but missed the deadline. *Id.* ¶ 33. The proposed SAC does not state whether the remaining plaintiffs applied for religious accommodations.

In September 2021, United sent postcards without a privacy envelope to employees who had not yet provided proof of vaccination. The postcards stated that "[o]ur records indicate that you have not uploaded your COVID-19 vaccine information to Flying Together" and that "[u]nvaccinated employees without a reasonable accommodation will be separated from United." *Id.* ¶ 154 (alterations in original). Also in September 2021, United began requiring unvaccinated employees to wear facemasks.

United moved to dismiss the plaintiffs' original complaint. The Court set a schedule for briefing that motion and extended the deadline for the plaintiffs' response at their request. On the due date for their response, the plaintiffs instead filed an amended complaint. For clarity, the Court will refer to this as the first amended complaint (FAC). Because that filing was outside the time for amendment as of course under Federal Rule of Civil Procedure 15(a)(1), the Court determined to treat the plaintiffs' FAC as a motion for leave to file an amended complaint. United filed a response opposing the motion, and the plaintiffs replied to the United's response. The Court issued a decision denying leave to amend because the proposed FAC failed to state a claim upon which relief could be granted. The Court instructed that unless the plaintiffs filed a second proposed amended complaint stating at least one viable claim over which the Court has jurisdiction, it would enter judgment in favor of United. The plaintiffs filed a second proposed amended complaint on September 26, 2023. The Court will refer to this as the second amended complaint (SAC). United opposed the motion, arguing that "Plaintiffs' SAC changes almost nothing . . . and do[es] not resolve any of the infirmities this Court already identified or which United argued in its prior opposition to leave or in its motion to dismiss." Defs.' Resp. to Mot. to Amend at 1. The plaintiffs filed a reply to United's opposition.

**Discussion**

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be

futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). In evaluating futility, the Court applies "the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022) (internal quotation marks omitted). To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.*

**A. EUA (count 1)**

In count one, the plaintiffs allege that United violated 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) of the Federal Food, Drug, and Cosmetic Act (FDCA) by requiring its employees to receive the COVID-19 vaccine, wear facemasks, and take PCR COVID-19 tests. The Court held that the plaintiffs could not bring a claim based on an alleged violation of the EUA provision of the FDCA because they failed to respond to United's argument that the FDCA does not create a private right of action and therefore forfeited the point.

The plaintiffs' proposed SAC nevertheless contains a virtually identical EUA claim with no relevant changes. In their reply to United's response in opposition to the motion to amend, the plaintiffs attempt to rebut United's original argument that there is no private cause of action under the EUA. But this is not appropriate at this stage of the litigation. The plaintiffs forfeited this point in the first round of briefing, leading the Court

to conclude that they failed to state a claim under the EUA. *See Anderson*, 2023 WL 5721594, at *2. "[B]y failing to respond responsively to the motion to dismiss . . . [the plaintiffs] forfeited [their] right to continue litigating [their] claim." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999). The fact that the Court provided the plaintiffs with a final opportunity to remedy any *pleading* deficiencies—such as the omission of critical facts needed to state a plausible claim—does not mean that they are entitled to relitigate merits issues that the Court has already decided. The plaintiffs, in effect, are requesting that the Court reconsider its previous ruling, and it is well established that a motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Even if the Court were to disregard the forfeiture issue, nothing in the plaintiffs' brief dissuades the Court that its previous ruling was incorrect. As the Court explained, "Seventh Circuit precedent is clear that '[t]he FDCA does not create a private right of action.'" *Anderson*, 2023 WL 5721594, at *2 (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019)); *see also Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) ("[T]he Food, Drug and Cosmetic Act does not create a private right of action."); *Jackson v. Methodist Health Servs. Corp.*, No. 22-CV-1307, 2023 WL 2486599, at *5 (C.D. Ill. Feb. 10, 2023) (dismissing the plaintiff's claim that her employer's COVID-19 vaccine mandate violated EUA in part "because the EUA does not provide for a private right of action"). The plaintiffs cite to *Doe v. Rumsfeld*, No. CIV.A. 03-707, 2005 WL 1124589 (D.D.C. Apr. 6, 2005), for the

proposition that the EUA offers a private right of action. But the plaintiffs in that case did not bring suit under the EUA provision of the FDA Act. To the contrary, the defendants argued that the FDA's EUA approval of a vaccination *protected* them from liability. *Id.* at *1. For all of these reasons, the Court concludes that the plaintiffs fail to state a claim under the EUA.

**B. Public disclosure of private facts and negligence (counts 2 and 3)**

In count two, the plaintiffs assert a claim for invasion of privacy by public disclosure of private facts. The claim is based on United sending postcards to employees who had not yet uploaded their vaccination status and by requiring unvaccinated employees to wear facemasks. In count three, the plaintiffs assert a negligence claim that is based on the same allegations. The Court held that both of these claims failed because the plaintiffs had not responded "to United's contention that the postcards did not contain any private facts and were not publicly disclosed" and had "thereby forfeited the issue." *Anderson*, 2023 WL 5721594, at *3. The Court also explained that "as United contends, a facemask requirement—or wearing a facemask—does not disclose a person's vaccination status: anyone, vaccinated or unvaccinated, may choose to wear a facemask." *Id.* The plaintiffs failed to respond to this argument as well. The Court further explained that "in any event, Anderson [did] not respond to United's contention that the negligence claim is barred by the Illinois Workers' Compensation Act" which "abrogates employer liability for all common law negligence claims." *Id.* (quoting *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1038–39 (7th Cir. 2018)).

Again, aside from minor typographical corrections, the plaintiffs have made no

changes to the allegations supporting either of these claims. Nor have they included additional details elsewhere in the complaint that correct the deficiencies that the Court identified in its previous order. The proposed amended complaint therefore fails to state a claim for the same reasons outlined in that order.

As the Court has explained, it need not consider the legal arguments in the plaintiffs' reply in support of their SAC to the extent that those arguments could have been raised in the first round of briefing. Even so, the Court notes that the plaintiffs offer no reason (or supporting authority) for the Court to reconsider its previous ruling. Instead, they merely repeat the same allegations the Court has explained are insufficient, sometimes duplicating their previous brief word for word. The plaintiffs mention, in passing, that "United identified 'unvaccinated' employees on staffing reports in addition to sending postcards through the mail for anyone to see." Pls.' Reply at 5. This allegation, however, is nowhere to be found in the proposed amended complaint. At any rate, this cursory reference falls far short of stating a claim for public disclosure of private facts. The plaintiffs do not say, for example, who viewed these "staffing reports" and therefore have not alleged that any private fact actually was publicly disclosed.

With respect to the claim based on United's facemask requirement, the plaintiffs *concede* that "[w]ith respect to masks, frankly, any person could choose to wear one if they wished," Pl.'s Reply at 5, thus providing additional support for the Court's conclusion that "wearing a facemask [ ] does not disclose a person's vaccination status" because "anyone, vaccinated or unvaccinated, may choose to wear a facemask." *Anderson*, 2023 WL 5721594, at *3. Finally, the plaintiffs argue that unvaccinated

employees, unlike vaccinated employees, had no choice whether to wear a mask. But because the Court has concluded that mask-wearing does not disclose any private fact, whether that mask-wearing was compulsory has no bearing on whether the plaintiffs have stated a claim for public disclosure of private fact.

### C. Illinois Whistleblower Act (count 4)

In count four, the plaintiffs allege that United violated section 20 of the Illinois Whistleblower Act, which provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. In its previous order, the Court explained that the plaintiffs premised their claims on United's alleged violation of 14 C.F.R. § 61.53, which prohibits a pilot who holds a medical certificate from operating an airplane during a medical deficiency, but did not explain how "the COVID-19 vaccine causes a 'medical condition that would make the person unable to meet the requirements for the medical certificate necessary for the pilot operation,'" especially given that the Federal Aviation Administration approved of pilots receiving the vaccines. *Anderson*, 2023 WL 5721594, at *7 (quoting 14 C.F.R. § 61.53). The Court therefore held that because the plaintiffs had "not alleged that United's vaccine mandate violates any statute, rule, or regulation, [the] Whistleblower Act claim fails." *Id.* at *8 (citing *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 45, 135 N.E.3d 891, 901).

Again, the plaintiffs have not made any changes to the substance of the allegations underlying their Illinois Whistleblower Act claims. As United notes, the proposed SAC suggests that they now assert that United's violation of Title VII is an

additional allegedly illegal activity giving rise to their Whistleblower Act claims. *See* Proposed Am. Compl. ¶ 218. United argues that this fails as a matter of law because the plaintiffs "must plausibly allege that each Plaintiff was punished for *his/her refusal to participate in* an activity that would result in a violation of a state or federal law, rule, or regulation," as opposed to alleging simply that the defendant's practices violated the plaintiff's rights. Defs.' Opp. to Mot. to Amend at 6. Not only does the plaintiffs' brief fail to respond to United's argument; it includes no mention of this new theory of liability. Instead, their brief in support of the proposed SAC focuses *exclusively* on United's violation of 14 C.F.R. § 61.53, which the Court already has held is insufficient. The plaintiffs have therefore forfeited any Whistleblower Act claim based on a Title VII violation. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

Finally, even putting aside the plaintiffs' forfeiture, the plaintiffs cannot premise their Whistleblower Act claims on United's Title VII violations because, as the Court will discuss next, they have not plausibly alleged that United violated Title VII. For all these reasons, the plaintiffs have failed to state a claim under the Illinois Whistleblower Act.

**D. Failure to accommodate (count 5)**

In count 5, the plaintiffs assert a Title VII claim based on United's failure to accommodate their religious beliefs. United argues that the plaintiffs' Title VII claims are barred because they have failed to exhaust administrative remedies by receiving right-to-sue notices from the EEOC. Although United previously raised this argument, the plaintiffs' proposed SAC contains no allegations regarding whether each plaintiff has

received a right-to-sue letter from the EEOC. Further, in their reply to United's opposition to the SAC, the plaintiffs state only that "[a]ll Plaintiffs have received or are in the process of receiving their right-to-sue letters from the EEOC." Pls.' Reply at 8. In other words, they effectively admit that some, if not all, of the plaintiffs have not received a right-to-sue letter, which is prerequisite to suit. *See Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013).

The plaintiffs argue that "the EEOC abrogated any responsibility regarding the legal implications of the EUA" and that "[s]uch a communication can be reasonably be interpreted to be an announcement by the EEOC that the normal administrative remedies were preemptively exhausted insofar as the EUA was involved." Pls.' Reply at 9. But the plaintiffs' Title VII claims do not involve the EUA. Rather, they are based on United's alleged discrimination based on their religious practices. At any rate, the plaintiffs cite no authority for the proposition that a claim may be deemed "presumptively exhausted" based on EEOC statements, and they do not respond to United's argument that there is no futility exception to Title VII's administrative exhaustion requirement. In sum, the Court agrees that the plaintiffs have not exhausted their administrative remedies and therefore have not met a necessary precondition to filing Title VII claims in federal court.

Regardless, the plaintiffs have failed to state a Title VII failure-to-accommodate claim for other reasons. First, for almost all of the plaintiffs, the proposed SAC *still* fails to specify whether they requested a religious accommodation, how United responded,

and whether they suffered an adverse employment action.[1] As the Court has previously explained, this is not a case in which each plaintiffs' circumstances are the same, thus permitting some blanket explanation of the facts covering all the plaintiffs. *See Anderson*, 2023 WL 5721594, at *4. For example, the plaintiffs' brief and proposed SAC suggest that some of the plaintiffs requested medical rather than religious exemptions, that some of the plaintiffs are in fact vaccinated, that some plaintiffs were allowed to continue working while masked, and that many plaintiffs still work for United. *See* Pls.' Reply at 8 ("Every Plaintiff applied for either a religious or medical exemption."); Proposed Am. Compl. ¶ 1; *id.* ¶¶ 10–41. The plaintiffs have now had three opportunities to provide basic factual details supporting his case and have not done so.

Second, United makes several arguments for why the remaining plaintiffs for whom the complaint includes some cursory details still have not adequately alleged facts sufficient to support a Title VII failure-to-accommodate claim. Several of these arguments were made by United with regard to the proposed FAC and were discussed by the Court in its previous order. Yet, the plaintiffs provide no response whatsoever to these specific points in their reply in support of the SAC. They therefore have forfeited any argument that these remaining plaintiffs have stated a claim under Title VII. *See*

---

[1] The plaintiffs for which the complaint contains no specific allegations whatsoever are: Lora Bauer, David Catala, James Curtis, Nicholas Decker, Aimee Doll, Kevin Hendershot, Kenneth Locke, Brenda Mallett, Brenda Marsden, Michelle Miller, John Morris, Carole O'Kobrick, Stephanie Pati, Darleen Shanley-Gilbert, Randy Sikora, Charles Snyder, John Sullivan, Doug Turner, Rhett Wolfe, James Zietlow, and Kevin Zwierko. The complaint alleges, without further elaboration, that the following employees were "terminated" or "constructively discharged": Sylvia Fitch-McConnel, Frank Quintas, and Tom Floyd.

*Kirksey*, 168 F.3d at 1041 ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

**E. Disparate treatment (count 6)**

In count six, the plaintiffs assert a Title VII claim based on disparate treatment based on their religious beliefs. As discussed, this claim is barred due to failure to exhaust administrative remedies. Regardless, the plaintiffs fail to state a claim for additional reasons. In its previous order, the Court explained that the plaintiffs failed to state a claim for disparate treatment (i.e., intentional religious discrimination) because they "specifically allege[d] in [the] complaint that [they were] treated differently 'as compared to similarly situated employees who received one of the three' COVID-19 vaccines, not because of [their] religious beliefs." *Anderson*, 2023 WL 5721594, at *6 (internal citation omitted). Moreover, the Court explained, they did not "allege any 'factual content to support an inference that the [vaccine mandate] *program itself* was adopted *because of* its adverse effects on [their] religious beliefs." *Id.* (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012)). The proposed SAC does nothing to remedy these deficiencies; in fact, proposed count six is unchanged from the previous version, aside from a minor typographical correction. By submitting a proposed complaint that makes no material changes, the plaintiffs are essentially asking the Court to reconsider its previous order without providing any grounds for why the Court should do so. The Court concludes that the plaintiffs fail to state a claim for disparate treatment for the same reasons discussed in its previous

order.

**F. Hostile work environment (count 7)**

In count seven, the plaintiffs assert a Title VII claim for the creation of a hostile work environment. As with their other Title VII claims, this claim is barred due to failure to exhaust administrative remedies. Regardless, the plaintiffs have failed to state a claim for additional reasons. The Court explained in its previous order that the plaintiffs failed to state a claim because they did not allege "sufficiently severe harassment or that any harassment was based on religion." *Id.* The proposed SAC makes no changes to address these issues; in fact, count seven of the complaint is unchanged aside from minor typographical corrections. Again, the Court declines to revisit its previous decision, especially given that nothing in the plaintiffs' brief responds to the Court's reasoning in that decision. The Court therefore concludes that the plaintiffs fail to state a claim for disparate treatment for the same reasons discussed in its previous order.

**G. Genetic Information Non-Discrimination Act (counts 8 and 9)**

In counts eight and nine, the plaintiffs allege that United violated the Genetic Information Non-Discrimination Act (GINA) by requiring COVID-19 vaccines and COVID-19 testing. The Court explained in its previous order that the plaintiffs failed to state a claim under GINA because "a COVID-19 vaccine is not 'genetic information,' and therefore does not implicate GINA." *Id.* at *7 (quoting 42 U.S.C. § 2000ff-1(a)(1)). The Court further explained that the plaintiffs had forfeited any argument that COVID-19 tests were "genetic tests" and that, regardless, COVID-19 tests did not meet the statutory definition. *Id.*

The proposed SAC remains unchanged except for the plaintiffs' attempt to revive their forfeited GINA claim based on COVID-19 testing by inserting language that "the PCR test is capable of detecting genotypes, mutations, or chromosomal changes, thus meeting the definition of a 'genetic test' 42 U.S.C. sec. 2000ff(7)(A) thus implicating GINA." Proposed Second Am. Compl. ¶ 289. As the Court has already explained, the plaintiffs are not entitled to a second chance to revive forfeited arguments or claims. That aside, the proposed SAC includes only conclusory language that restates the statutory definition of a "genetic test" in GINA that the Court quoted in a footnote, without any factual support. "[A] court need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). As the Seventh Circuit has explained, "plaintiffs who merely parrot the statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims" fail to state a plausible claim for relief. *Id.* For all of these reasons, the Court concludes that the plaintiffs have not stated a claim for relief under GINA.

**H. Constitutional claims (count 10)**

In count ten, the plaintiffs assert various constitutional claims against United under section 1983 or, in the alternative, under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The Court explained in its previous order that these constitutional claims had numerous deficiencies, such as the absence of state action. These deficiencies were primarily legal rather than factual in nature and thus cannot be remedied by an amended complaint. In any event, the plaintiffs have made

virtually no changes to the allegations pleaded in count 10, nor do they add any relevant allegations elsewhere in the complaint that would address the myriad issues regarding this claim that the Court identified in its previous order. The Court therefore concludes that the plaintiffs fail to state a claim under section 1983 or *Bivens*.

**I. Intentional and negligent infliction of emotional distress (counts 11 and 12)**

Finally, the plaintiffs assert claims for intentional and negligent infliction of emotional distress (IIED and NIED). Again, the Court previously determined that they forfeited these claims by failing to respond to United's various arguments against them. And, again, the proposed SAC contains identical language to the proposed FAC that the Court concluded failed to state a claim. Finally, the plaintiffs do not respond to United's argument that the NIED claim is barred by the Illinois Workers' Compensation Act and that the IIED claim "fails to plausibly allege facts support (a) outrageousness, (b) intent to cause harm by Defendants or (c) severe emotional distress." Defs.' Opp. to Mot. to Amend at 13. Therefore, they have failed to state a claim for IIED and NIED.

**Conclusion**

For the reasons stated above, the Court denies plaintiffs' motion for leave to amend [dkt. no. 31]. At this point, the plaintiffs have had sufficient opportunities to attempt to state viable claims, and they have failed to do so. The Court therefore directs the Clerk to enter judgment stating as follows: The plaintiffs' claims are dismissed with prejudice.

MATTHEW F. KENNELLY
United States District Judge

Date: April 10, 2024